## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JACQUELINE C.,

                                    Civil No. 21-1612 (JRT/TNL)

                    Plaintiff,

v.                                  **MEMORANDUM OPINION AND ORDER**
                                    **ADOPTING REPORT AND**
                                    **RECOMMENDATION OF THE**
KILOLO KIJAKAZI,                    **MAGISTRATE JUDGE**
*Acting Commissioner of Social Security*,

                    Defendant.

Fay E. Fishman, **PETERSON & FISHMAN**, 2915 South Wayzata Boulevard, Minneapolis, MN 55405, for plaintiff.

Teresa Christenson, **SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL**, 1301 Young Street, Mailroom 104, Dallas, TX 75202; Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for defendant.

Plaintiff Jacqueline C. brought this action against the Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, ("Commissioner") requesting review of an administrative law judge's ("ALJ") denial of Plaintiff's application for disability insurance benefits. Upon cross motions for summary judgment, Magistrate Judge Hildy Bowbeer filed a report and recommendation ("R&R") recommending denying Plaintiff's motion and granting the Commissioner's motion, thereby upholding the ALJ's denial. Plaintiff objected to the R&R, arguing that the ALJ's findings on the impact of Plaintiff's symptoms, findings on the medical opinion evidence, and the ALJ's hypothetical question asked of

the vocational expert ("VE") are not supported by the record.  After a careful review of the record, the Court will overrule Plaintiff's objections, adopt the R&R, deny Plaintiff's motion, and grant the Commissioner's motion for summary judgment because the ALJ's decision is supported by substantial evidence from the record as a whole.

**BACKGROUND**

The facts of this case are described extensively in the R&R and are therefore summarized here as background to Plaintiff's objections.  (*See* R&R at 2–26, June 20, 2022, Docket No. 34.)  In late 2018, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of September 15, 2015. (Soc. Sec. Admin. R. ("R.") 16, 234, Nov. 17, 2021, Docket No. 17.)  The date she was last insured was June 30, 2018.  (R. 16, 118.)  She stated she suffered from anxiety, post-traumatic stress disorder ("PTSD"), depression, a lower back injury, and elbow and shoulder pain that limited her ability to work.  (R. 304.)  She asserted that her PTSD is the result of several deaths in her family as a child, sexual assault, and the 2014 suicide of her teenage son.  (R. 316.)  After holding a hearing, the ALJ issued an unfavorable written opinion in December 2020 denying Plaintiff's disability application after finding that plaintiff was not disabled between September 15, 2015, and June 30, 2018.  (R. 13–28.)

The ALJ found that Plaintiff had four severe impairments: major depressive disorder, generalized anxiety disorder, PTSD, and alcohol abuse disorder.  (R. 19.)  The ALJ determined these impairments were not an impairment or combination of impairments

that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 19.)  *See also* 20 C.F.R. §§ 404.1520(d), 404.1525–.1526.

After analyzing Plaintiff's symptom reports, medical opinions, and other evidence, the ALJ then found that through June 30, 2018, Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the individual would be limited to work in a low stress job defined as having only occasional decision making required, no production rate or pace work, meaning no work at a line or station where the worker cannot control the speed of the work, and capable of only occasional interaction with the public and co-workers.

(R. 21.)

Relying in part on testimony from the VE, the ALJ determined that, although Plaintiff could not perform her past job as a bank teller, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" based on her age, education, work experience, and RFC through June 30, 2018.  (R. 26–28.) Specifically, the VE testified that some jobs—including "Laundry Worker" and "Mailroom Clerk"—existed for a person with the limitations the ALJ found her to have.  (R. 59–60.) The ALJ found the VE's testimony consistent with the Dictionary of Occupational Titles and the VE's areas of expertise.  (R. 27–28.)  Therefore, the ALJ found Plaintiff was not disabled from September 15, 2015, through June 30, 2018, under the Social Security Act. (R. 28.)  The Appeals Council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. 1.)

Plaintiff then brought this action seeking the Court's review of the ALJ's decision. (Compl., July 14, 2021, Docket No. 1.) Plaintiff and the Commissioner filed cross motions for summary judgment. (Pl.'s Mot. Summ. J., Jan. 3, 2022, Docket No. 20; Def.'s Mot. Summ. J., Feb. 10, 2022, Docket No. 30.) The Magistrate Judge issued an R&R recommending the Court deny Plaintiff's motion and grant the Commissioner's motion. (R&R at 45.) The Magistrate Judge found substantial evidence in the record supporting the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Social Security Act between September 15, 2015, and June 30, 2018. (*Id.* at 28–45.) Plaintiff timely objected to the R&R, asserting the ALJ made three errors: (1) the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence based upon the ALJ's consideration of Plaintiff's reported symptoms; (2) the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence based upon the ALJ's analysis of medical opinions; and (3) the ALJ improperly relied upon a defective hypothetical questions he asked of the VE to determine if Plaintiff could perform work. (Pl.'s Obj. to R&R, June 27, 2022, Docket No. 36.)

## DISCUSSION

### I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those

objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo "properly objected to" portions of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). Unobjected portions of the R&R are also only reviewed for clear error. Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Because Plaintiff's and the Commissioner's motions for summary judgment are dispositive motions, the Court reviews Plaintiff's objections de novo and unobjected portions of the R&R for clear error.

## II.   ANALYSIS

Plaintiff objected to three findings in the R&R arguing the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence because of the ALJ's errors in his consideration of (1) the Plaintiff's symptom reports and (2) medical opinions and (3)

the ALJ inappropriately relied on testimony of the VE in response to a defective hypothetical question.[1]

When reviewing a denial of benefits, a court is limited to reviewing whether the decision complied with the law and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). A court must uphold a denial of benefits based on factual findings if the denial "is supported by substantial evidence on the record as a whole." *Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotation marks omitted). Still, this requires considering both evidence that supports and detracts from the ALJ's decision. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence, however, may be less than a preponderance of the evidence and a court may not reverse the ALJ's decision "even if substantial evidence would have supported a contrary decision or even

---

[1] In a footnote, Plaintiff also objected to the Magistrate Judge's denial of her motion to amend. (*See* Order Denying Mot. to Amend, Feb. 24, 2022, Docket No. 33.) As Plaintiff correctly notes, this objection is beyond the scope of the R&R and the motions for summary judgment. Thus, the Court will not consider the denial of the motion to amend here. One may object to a magistrate judge's ruling on a non-dispositive motion such as a motion to amend by directly appealing that order. *See* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

if [it] would have decided the case differently." *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022).  In other words, if one can reasonably draw two inconsistent conclusions, both of which are supported by the evidence, and one supports the ALJ's findings, the Court must affirm the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

When evaluating whether substantial evidence supports the conclusion, the Court, however, may only consider the rationale the ALJ gave for the decision. *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) ("A reviewing court may not uphold an agency decision based on reasons not articulated by the agency, when the agency has failed to make a necessary determination of fact or policy upon which the court's alternative basis is premised." (cleaned up)); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943). Thus, even if there is evidence in the record for an alternative rationale that would support the outcome reached by the ALJ, a reviewing court may not search the record for this evidence.  *See Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990).  Still, standing alone, an ALJ's failure to adequately explain the rationale or factual finding or to address specific facts in the record does not require a reviewing court to remand if the record as a whole provides substantial evidence for the decision.  *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

A claimant must prove that she was disabled before the last date she was insured. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  If the claimant is disabled but only became disabled after insurance expired, the claimant is ineligible.  *See id.*  Evidence from

outside the insured period may, however, be helpful to determine whether the insured was disabled during the covered period.  *See id.*; *Smith v. Comm'r, Soc. Sec. Admin.*, 738 F. App'x 889, 891–92 (8th Cir. 2018).

**A.    Administrative Law Judge's Assessment of Plaintiff's Residual Functional Capacity**

A disability claimant's RFC is the most the claimant can do as determined by considering the combined limiting effects of all impairments including severe and non-severe impairments.   20 C.F.R. § 404.1545(a), (e).   An impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(D).  An RFC must be "based on all the relevant evidence in [the claimant's] case record."  20 C.F.R. § 404.1545(a)(1).

**1.    Plaintiff's Subjective Symptom Reports**

Plaintiff contends the ALJ failed to properly evaluate Plaintiff's reported symptoms and that the Magistrate Judge's finding that the ALJ did conduct the evaluation is not supported by the record.

The ALJ is required to "consider all [claimant's] symptoms . . . and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  Symptom evidence includes a claimant's subjective statements about any symptoms.  *Id.*  The evaluation of this evidence requires evaluating the intensity and persistence of symptoms by

considering all available evidence including factors such as the "location, duration, frequency, and intensity" of symptoms and "[p]recipitating and aggravating factors." *Id.* § 404.1529(a), (c)(3).  ALJs also consider any inconsistencies in the evidence or conflicts with other statements and evidence.  *Id.* § 404.1529(c)(4).  Varying symptom reports do not, by themselves, necessarily indicate there are inaccuracies as symptoms themselves can vary over time.  SSR 16-3p, 82 Fed. Reg. 49,462, 49,466 (Oct. 25, 2017).

The ALJ discussed Plaintiff's subjective symptoms she reported at the hearing, in her application, and with various medical providers.  (R. 22–24.)  The ALJ cited specific symptom reports Plaintiff made including statements that showed various levels of limitation.  This discussion includes providers' own contemporaneous evaluations of Plaintiff's symptoms and limitations.

Plaintiff contends that the ALJ did not evaluate her symptoms using the required 20 C.F.R. § 404.1529(c)(3) factors.  Subsection (c)(3) lays out a non-exhaustive list of factors for ALJs to consider including (1) daily activities; (2) the duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the effectiveness and side effects of medication; (5) other treatment; and (6) any other measures used to relieve symptoms.  Although the ALJ explicitly noted these factors, the decision does not then explicitly walk through each factor in turn.  But the ALJ is not required to do so and the ALJ opinion touches on these and other factors.  For example, the ALJ discussed Plaintiff's ability to work for thirteen months after her son's suicide and her ability to

perform musical shows both solo and in a band, shop independently, and do laundry illustrating her daily activities.  The ALJ discussed the duration, frequency, and intensity of her symptoms and their precipitating and aggravating factors such as the anniversary of her son's suicide and holidays.  He also discussed various types of treatment— medication, professional therapy, religious counseling, and support groups—she received and the effects these had on Plaintiff.  The ALJ noted both facts and instances showing greater and lesser effects on Plaintiff.  The record itself—both parts the ALJ cited and other parts—both weigh in favor and against these various factors.  For example, when Plaintiff took medications, part of the record shows improvements followed by the Plaintiff voluntarily stopping them.  (*See* R. 45.)  While it is true the record in places shows that medication may not have always been working well, (*see* R. 458), other places indicate medication had a positive effect, (*see, e.g.*, R. 524–25).  This is the type of evidence that could support two different conclusions.

The ALJ also discussed Plaintiff's various symptom reports over time alongside the observations of medical providers.  For example, the ALJ noted that in early 2016 she reported anxiety and trauma to a counselor who agreed that she appeared depressed and anxious.  (R. 23 (citing R. 853–54).)  He then went on to note that the counselor noted that she had no significant preoccupations, no impairment of memory, stable impulse control, and no hallucinations.  (R. 23 (citing R. 855).)  These are accurate reports of the record.  While the record for this provider encounter includes additional negative

symptom reports the ALJ did not explicitly name, the ALJ's summary is an accurate, reasonable summary of the symptom reports, and the ALJ's summary also does not include other provider notes that are more positive. (*See* R. 853–55.)  The remainder of the ALJ's analysis in this part of his opinion includes similar analysis: discussion of Plaintiff's subjective symptom reports, Plaintiff's activities, and provider notes.  This is the type of analysis required by 20 C.F.R. § 404.1529(c) and SSR 16-3p.

Plaintiff also contends that the ALJ improperly diminished her symptoms and ignored the increasing problems Plaintiff had over time.  The symptom reports in the record could support a finding that Plaintiff's symptoms generally worsened over time. For example, as Plaintiff points out, at first she was able to work, but as her symptoms worsened, she quit.  On the other hand, the record could support a conclusion that prior to quitting her bank teller job, the increased symptoms were at least in part directly tied to the type of work she was doing—constantly interacting with numerous customers each day.  (*See* R. 43.)  This fact supports the ALJ's findings as it indicates a precipitating and aggravating factor is the precise nature of her previous job, not a generalized limitation. (*Cf.* R. 59–60 (VE testifying that someone with Plaintiff's limitations could not work as a bank teller but could work other jobs).) And the RFC took this into consideration as it included a limitation that she was capable of only occasional interaction with the public, unlike the near constant interaction of her previous job.  Additionally, some of the evidence showing an increase in symptoms occurred after Plaintiff's last insured date,

particularly many of the symptoms Plaintiff reported to her therapist Lisa Jaeger. While these symptoms may help elucidate her condition before June 30, 2018, it may also be the case that Plaintiff's increased symptoms only warranted a further decreased RFC after she was no longer insured.

The record thus supports a conclusion that the ALJ properly considered her increasing symptoms for at least three reasons. First, the ALJ's determination of her RFC meant she could not perform her prior job which reflects that the ALJ agreed she was experiencing worse symptoms after September 15, 2015, than before. Second, much of the significant evidence of increased symptoms came after June 30, 2018. Thus, while this evidence may elucidate her RFC as of the last date of being insured and a hypothetical RFC produced for dates after her last insured date may have contained more limitations, it was not improper for the ALJ to not include all these post-June 30 symptoms in the RFC. Third, the record also shows the severity of her symptoms shifted over time. (*Compare, e.g.*, R. 920 (reporting four anxiety attacks but feeling less obsessive in May 2018), *and* R. 912 (progressing but getting stuck and obsessing about getting better in June 2018), *with* R. 923 (obsessing over son's death in April 2018).) These changing symptoms also indicate it was not erroneous to conclude that Plaintiff's limitations did not only increase.

Plaintiff also contends the ALJ's discussion of Plaintiff's hygiene failed to address records of poor hygiene. The R&R, however, directly addressed Plaintiff's contention pointing out that the ALJ did in fact acknowledge instances of poor hygiene. While the

ALJ did not address every mention of poor hygiene Plaintiff points to, he noted that she testified to her inability to clean herself or her home and nothing requires the ALJ to list every fact in the record. *See Black*, 143 F.3d at 386 ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (citations omitted)). The ALJ's mention of Plaintiff's hygiene—both good and bad—support a finding that he considered this evidence to determine the full nature of her symptoms.[2]

Plaintiff contends the ALJ found the record did not show any mental preoccupations that could impact her work. She points to the ALJ's various statements that Plaintiff has no significant preoccupations. While the ALJ did not use the word "preoccupations," the ALJ noted preoccupations in various places including noting Plaintiff's "pervasive thoughts of her son," her difficulty focusing, and her limitations on concentration. (R. 20–21, 23, 25.) The ALJ discussed these various symptoms alongside provider notes about the existence or lack thereof of significant preoccupations. The ALJ's opinion thus shows the ALJ considered facts in the record as to the limiting nature of preoccupations and similar issues. And the record provides substantial evidence for the

---

[2] Plaintiff also objects to the R&R's handling of this issue, arguing the point is not that her hygiene itself limited her employment opportunities but that the ALJ used this to show less severe symptoms. The R&R addressed Plaintiff's argument pointing to the ALJ noting instances of good and bad hygiene. It then went on to address another possible argument: whether poor hygiene, in addition to showing severity of symptoms, may also have been directly preventing her from working.

ALJ's conclusions as the record includes evidence showing the preoccupations were not significant and that Plaintiff was able to concentrate and maintain attention and focus. (*See, e.g.*, R. 641–42, 855, 975.)   Importantly, the record does not indicate she was diagnosed with an obsessive compulsive disorder that may have indicated the preoccupations were more significantly and regularly affecting Plaintiff.  (R. 1097 ("There is no evidence of obsessions or compulsions ruling out Obsessive Compulsive Disorder."); *see also* R. 664–65.)   Thus, even if—as the R&R found—the record could support a different decision, substantial evidence supports ALJ's decision regarding Plaintiff's preoccupations.

Plaintiff contends the ALJ and the R&R incorrectly considered the nature of Plaintiff's musical performances and their cancellations, arguing they are concrete examples of her lack of reliability and need for support which the ALJ did not address. The ALJ, again, need not list every fact in the record in his decision.  *See Black*, 143 F.3d at 386.  Plaintiff contends the record shows most of the cancellations were for general anxiety from her son's death.  This, however, overstates the record.  While it is true the record shows many cancellations, the reason for the cancellation is not always clear.  (*See, e.g.*, R. 742 (noting she missed her "gig" with no explanation).)   One concrete example connected to her son's death was a performance scheduled in a place which is a specific trigger for her and is not generally connected to working.  (R. 1021.)  Moreover, after cancelling, she was relieved and could go about the rest of her day indicating the anxiety

was neither generalized nor so pervasive that a greater limitation was required. (R. 1021.)

For other cancellations, while a reasonable inference may be that the cancellation was

connected to her mental health issues, the same notes are connected with less severe

symptoms. (*See, e.g.*, R. 895–96 (discussing Plaintiff's troubles being around people and

with performances but also discussing going out with a friend and feeling better).) Finally,

the limitations in Plaintiff's RFC appear to take into account Plaintiff's struggles with work

similar to musical performances as the RFC indicates Plaintiff requires a low stress job

with only occasional decision making and limited interaction with the public and co-

workers, which is inconsistent with publicly performing music in a band.

Plaintiff also faults the way the ALJ handled reports her symptoms were improving

or stable. As Plaintiff correctly contends, one can be stable or improving but still be

disabled. *See Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). The ALJ, however, did

not rely on these as unadorned statements sufficient to demonstrate that she was not

disabled. Instead, they were in the context of other facts that may support a finding that

Plaintiff was not disabled. (*See, e.g.*, R. 23 (noting that in late 2017 Plaintiff's mood was

normal and stable); R. 24 (noting that in November 2019 Plaintiff's mood was depressed

but also stable, and positive with rational and logical thoughts).)[3] As the ALJ considered

these statements in a broader context, the ALJ did not improperly treat these statements

---

[3] Moreover, these parts of the record undercut Plaintiff's arguments addressed elsewhere that her symptoms largely increased with time.

in isolation but rather examined them to see if these and other statements were consistent with the evidence in the record.

In sum, considering the record as a whole there is substantial evidence to support the ALJ's treatment of Plaintiff's symptom reports and his conclusion that they were not entirely consistent with all other evidence as to their intensity, persistence, and effect. This is the analysis required by 20 C.F.R. § 404.1529 and SSR 16-3p. While it is possible that—as the R&R found—one could reach another conclusion, because the ALJ's treatment of these issues is supported by substantial evidence, the Court may not overturn it.

### 2.    Medical Opinions

Plaintiff also contends the ALJ failed to properly evaluate the offered medical opinions and that the Magistrate Judge's finding that the ALJ did is not supported by the record.

A claimant's "RFC is a medical question, and an ALJ's findings must be supported by some medical evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). To this end, the Commissioner has promulgated regulations describing how ALJs are to weigh medical evidence.

Medical opinions and prior administrative medical findings are not given deference or controlling weight. 20 C.F.R. § 404.1520c(a). Instead, the persuasiveness of medical opinions is evaluated using five factors: (1) supportability, (2) consistency with the evidence, (3) relationship of the one offering the opinion to the claimant, (4)

specialization of the provider, and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

The most important factors are supportability and consistency, which the regulations

require the ALJ to explicitly address.  20 C.F.R. § 404.1520c(b)(2).

Plaintiff identifies two issues with the ALJ's treatment of the medical evidence she

contends were errors.  First, she contends the ALJ substituted his own medical opinion by

rejecting every medical opinion on the record.  Second, she contends the ALJ's opinion is

not supported by the record and insufficiently explains the rejection of Lisa Jaeger's and

Ronald Kahler's opinions.[4]

Although RFCs must be based at least in part on medical evidence and ALJs cannot

simply substitute their lay opinions for expert medical, *see Chunn v. Barnhart*, 397 F.3d

667, 672 (8th Cir. 2005), it is not erroneous to review multiple medical opinions, conclude

that no single opinion correctly captures the claimant's RFC, and determine the RFC is

somewhere between the offered opinions, *Pierce*, 22 F.4th at 773.  This is so because the

ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant

evidence."  *Guilliams*, 393 F.3d at 803 (quotation omitted).  Here, the ALJ rejected both

opinions asserting Plaintiff had no limitations and opinions with more limitations than

those in the RFC.  Whether this was proper depends on whether the ALJ adequately

---

[4] Jaeger began treating Plaintiff as a therapist in April 2018.  (R. 923.)  Kahler evaluated
Plaintiff in November 2019 in support of her appeal of the Commissioner's initial denial of
Plaintiff's application before the 2020 ALJ hearing.  (R. 794.)

explained this rejection and whether the ALJ's opinion is supported by substantial evidence.

The ALJ explained why he found all offered medical opinions lacking in supportability and consistency.  For the prior administrative findings, the ALJ explained that these opinions found no severe impairments but noted this was inconsistent with and did not address the record of symptom reports showing Plaintiff's difficulties focusing.  (R. 25.)  Plaintiff does not object to the rejection of these opinions.  She instead objects to the ALJ's handling of Jaeger's and Kahler's opinions.

For Jaeger's opinion, the ALJ explicitly stated why her opinion that Plaintiff could not engage in employment was neither supported by nor consistent with the record.  The ALJ pointed to Jaeger's own examination findings of improvements, a need for only intermittent therapy, lack of symptoms supporting formal medical diagnoses, and appropriate thought content.  (R. 25–26.)  This rejection is supported by substantial evidence.  It is both consistent with record evidence predating Jaeger's treatment of Plaintiff and consistent with Jaeger's own notes and observations.  Plaintiff is correct that Jaeger's notes show many struggles and provide evidence of problems.  Yet, they also indicate Plaintiff making progress, responding well to treatment when followed, and notes of activities Plaintiff is engaging in between sessions that are inconsistent with Jaeger's opinion.  (*See, e.g.*, R. 890–901, 920–21.)  Plaintiff rebuts this in part by arguing this inappropriately cherry picks from the record.  The record, however, is replete with

evidence both supporting and detracting from Jaeger's opinion.  The ALJ treats Jaeger's opinion similarly to the administrative opinions of no disability: her opinions lack supportability and consistency because Jaeger does not explain why her findings of disability are still reliable despite these inconsistencies.  There is thus substantial evidence to support the ALJ's finding that the record is inconsistent with Jaeger's opinion.

When evaluating Kahler's opinion, the ALJ explicitly noted several reasons why it was not consistent with Kahler's own examination of Plaintiff or with other evidence in the record.  The ALJ pointed to portions of Kahler's findings that the ALJ considered to be contradictory with other findings Kahler made.  The ALJ noted several pieces of evidence on the record from near the time of Kahler's assessment that are inconsistent with his opinion.  In other words, the ALJ explicitly addressed evidence that undermined the supportability and consistency of Kahler's opinion.  Much like Jaeger's opinion, there is other evidence on the record that could support Kahler's opinion.  Still as the ALJ explained why he found Kahler's opinion unpersuasive and that reasoning is supported by substantial evidence on the record, the Court cannot substitute its judgment for the ALJ's.  The ALJ's explanation for finding the medical opinions unpersuasive is brief, but each explanation is adequate for the Court to consider it and is consistent with substantial evidence on the record.

There may be substantial evidence on the record for the persuasiveness of Jaeger's and Kahler's opinions.  And coupled with this medical testimony, there may be substantial

evidence in support of Plaintiff's subjective symptom reports to find a greater intensity, persistence, and effect of Plaintiff's assessed disorders such that one could reasonably conclude Plaintiff had more significant limitations than the ALJ's determination of her RFC.  Based on consideration of the full record, there is, however, substantial evidence in support of the ALJ's analysis of this evidence and thus of his determination of Plaintiff's RFC as a whole.  Because substantial evidence supports the ALJ's findings and the RFC, the Court may not reverse the ALJ's findings.

### B.    Administrative Law Judge's Questioning of the Vocational Expert

When evaluating whether there are jobs a claimant could perform in the national economy, the ALJ may only rely on the testimony of a VE if the hypothetical question posed to the VE adequately reflects the claimant's limitations.  *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).  The hypothetical question must "set[] forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."  *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).  The hypothetical may exclude alleged impairments that the ALJ has rejected and need only include those that are substantially supported by the record as a whole.  *Id.*; *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).  If the hypothetical question does not precisely set out all the claimant's impairments, the question is defective and the VE's response is not substantial evidence of the ability of the claimant to work.  *O'Leary v. Schweiker*, 710 F.2d 1334, 1343 (8th Cir. 1983).

Plaintiff contends that because the limitations Jaeger and Kahler found were not properly incorporated in the RFC, the hypothetical question was erroneous and the ALJ

cannot rely on it.  During the hearing, the ALJ asked the VE a hypothetical question that matched the ALJ's finding of the Plaintiff's RFC nearly word for word.  (*Compare* R. 21, *with* R. 59–60.)  Whether the hypothetical question was defective thus turns on whether the RFC is defective.

Because the Court finds that the ALJ's decisions to discount the persuasiveness of Jaeger's and Kahler's opinions are supported by substantial evidence and the RFC as a whole is supported by substantial evidence, the RFC was not defective.  Therefore, the ALJ's hypothetical question was also not defective.  The ALJ thus could rely on the VE's answer to determine whether the Plaintiff had the ability to perform work available in the national economy throughout the alleged disability period.

## CONCLUSION

Although it is possible that the record may support a decision in favor of the Plaintiff, substantial evidence in the record as a whole supports the ALJ's evaluation of Plaintiff's subjective symptom reports and the medical opinions.  As such, the ALJ's determination of Plaintiff's RFC and the ultimate decision to deny an award of benefits is supported by substantial evidence.

The Court will, therefore, overrule Plaintiff's objections, adopt the R&R, deny Plaintiff's motion for summary judgment, and grant the Commissioner's motion for summary judgment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant's Objection to the Report and Recommendation [Docket No. 36] is **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 34] is **ADOPTED**;

3. Plaintiff's Motion for Summary Judgment [Docket No. 20] is **DENIED**; and

4. Defendant's Motion for Summary Judgment [Docket No. 30] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 26, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge